# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| In re: | |
| JOI HELMES, | Case No. 01-81277-RGM |
| | (Chapter 7) |
| Debtor. | |
| JOI HELMES, | |
| Complainant, | Adv. Proc. No. 05-1178 |
| vs. | |
| WACHOVIA BANK, N.A., | |
| Respondent. | |

## <u>MEMORANDUM OPINION</u>

This case concerns the proper reporting of a discharged debt to a credit reporting agency.

Joi Helmes filed a voluntary petition in bankruptcy under chapter 7 of the Bankruptcy Code in this

court on October 4, 2001, and was granted a discharge on January 17, 2002. She properly scheduled

Wachovia Bank as a creditor with a claim of $11,017.86. The bank received timely notice of the

filing of the petition and the discharge. While the bankruptcy case was pending and for a short

period after the discharge was granted, the bank to reported the debtor's account to a credit reporting

agency as increasingly past due and in the full amount of the outstanding balance. The credit

reporting agency reported the claim as "Over 120 days Past Due" in the amount of $11,714.00 until

the debtor complained in 2004 when it changed the notation to "Discharged in bankruptcy" and the

amount due to zero. Until she requested a copy of her credit report shortly before her complaint to

1

the credit reporting agency, the debtor was unaware of the manner in which the bank's claim appeared on her credit report.

The debtor asserts – and the bank agrees – that industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation "Discharged in bankruptcy" and with a zero balance due. A credit report entry that reflects a past due account is treated differently by prospective creditors in evaluating credit applications than an entry that reflects a debt that has been discharged in bankruptcy. The essential difference is that a discharged debt represents a historical fact, that the prospective borrower filed bankruptcy in the past and was relieved from the obligation. Nothing is now due. A past due debt represents a delinquent but legally enforceable obligation that must be resolved.

The debtor asserts that the bank violated the discharge stay by reporting the debtor's obligation as "past due" rather than as "discharged in bankruptcy" because it did so in an effort to collect the debt, not merely to report a historical fact to the credit reporting agency.

The debtor presented two witnesses both of whom qualified as experts. The first was a mortgage broker who described the lending industry from the point of view of a lender initiating loans. Lending decisions are primarily based on an individual's credit score which is computed principally from the prospective borrower's credit report. As the credit score drops, the risk that the prospective borrower will not pay as agreed increases. As the prospective borrower's credit score drops, options narrow, interest rates rise and closing costs increase. In addition, every "past due" notation must be resolved by correcting the error if the report is erroneous; showing that it is not due, such as being included in a bankruptcy discharge; bringing the account current if it is simply

in arrears; or paying the debt in full if it has matured.[1]   Correcting an erroneous report, such as changing a "past due" notation to a "discharged in bankruptcy" notation, is time consuming, expensive and frequently unsuccessful.  Some prospective borrowers simply pay the discharged debt rather than insist on correction.  The debtor's second witness opined that one purpose lenders submit derogatory credit statements, such as a "past due" notation rather than a "discharged in bankruptcy"notation, to credit reporting agencies is to collect the underlying debt.  Reporting an account as past due rather than discharged in bankruptcy increases the likelihood of collecting the debt some time in the future, usually when the debtor seeks new credit.

The debtor experienced many credit-related frustrations after her bankruptcy case ended. Several months after she received her discharge she obtained two car loans, but at high interest rates. A year later she was turned down for a car loan.  Two years after her discharge she was turned down for several loans and was only able to qualify for one loan, but the interest rate was "way too high." She finally returned to her bankruptcy attorney who obtained her credit report and discovered the derogatory creditor notation reported by the bank years before.  Counsel successfully got the credit reporting agency to change the "past due" notation with an outstanding balance to "discharged in bankruptcy" with a zero balance.  This suit followed.

The bank defends itself arguing that the erroneous report was an accidental aberration, that it was not wilful.  The bank agrees that it erred by repeatedly reporting the debtor's account as "past

---

[1]A past due notation is resolved if the lender can match the derogatory statement to a debt known to be discharged in bankruptcy. This is not always possible. The credit report may reflect the lender's formal corporate name while the debtor may schedule the same lender in its commonly used trade name.  Debts are increasingly sold and are frequently reported to credit reporting agencies by the new holder in its name, a name that  may not be known to the debtor.  The amounts reported by creditors and scheduled by debtors frequently vary, sometimes significantly. Even if a debtor uses the balance on the last billing statement, there are inevitably additional charges – interest that accrued after the last statement, late charges, possibly collection costs and other fees.  Time is usually important in the credit transaction and creditors' responses are often neither sufficient nor timely.

due" in 2002 and that it made no effort to correct the error.  Its witnesses described how its billing and collection departments operated both at the time and presently.  In 2002, a clerk manually set a flag on an account when the bank received notice that the account holder had filed a petition in bankruptcy.  It also changed the mailing address of the debtor to an internal address so that if a bill or other notice was prepared, it would be mailed to the bank and not to the debtor.  Since 2002, the bank upgraded its billing and collection systems and the bankruptcy flags are set automatically.  The bank's employees testified that the bank's policy now and in 2002 is not to contact individuals who have filed bankruptcy; not to further report the account to the credit reporting agency as "past due" while the bankruptcy is pending; and to report the account as "discharged in bankruptcy" with a zero balance due when the discharge is granted.  The bank acknowledges that an error was made in this case and its employees testified that it would have been corrected if it had been brought to the bank's attention.[2]

Section 524(a)(2) of the Bankruptcy Code is an injunction against any act to collect or recover a discharged debt.  The act must be intentional.  An unwitting or unintentional act does not violate the discharge stay.  The intent necessary in a §524 (a)(2) action is the same as in a §362(a) action.  *In re Cherry,* 247 B.R. 176, 187 (Bankr.E.D.Va. 2000).  The Court of Appeals upheld a finding that a creditor violated the automatic stay when there was "ample evidence in the record to support the conclusion that [the creditor] knew of the pending petition and intentionally attempted

---

[2]In an effort to show that its action was accidental, a bank employee testified that the bank submits more than 20.7 million trade lines to the three principal credit reporting agencies every year and that they have only 9,100 complaints, a dispute rate of less than 0.04%.  This is an interesting, but meaningless, statistic.  The complaint rate is not a random sample of the trade lines submitted but is self-selected, that is, derived from those borrowers who believe that something is wrong.  In this case, for example, the debtor did not suspect that there was a mistake in her credit report for over two years.  There may be other errors that have not been detected.  A random sample thoroughly audited may well result in an entirely different error rate.  Nor are the types of complaints classified.  The statistic would imply something entirely different if all 9,100 complaints related to bankruptcy cases and if there were only 9,100 bankruptcy trade lines in the 20.7 million trade lines reported.  The court cannot give the statistic any weight.

to [continue collection procedures] in spite of it." *Budget Service Co. v. Better Homes,* 804 F.2d 289, 292-293 (4th Cir.1986). An intentional act is more than an inadvertent act or a clerical error. *Hamrick v. United States (In re Hamrick),* 175 B.R. 890 (W.D.N.C.1994). In *Hamrick,* the error was a clerical error made by a new employee. It was an isolated event. *Id.* at 892-893.

The burden of proof is on the debtor. Here the debtor failed to show that submitting the derogatory report to the credit reporting agency or allowing it to remain in the debtor's credit record was an act intended to collect a debt. The debtor asserts that the only reason for a creditor to submit such a derogatory report is to collect the debt. The debtor is certainly correct that such a derogatory notation on a credit report may have the effect of causing some debtors to pay the discharged debt, but that does not prove that it was submitted with that intention. The argument assumes that there is no other reason why such a derogatory report would be submitted and, concludes that it must have been submitted with the proscribed intent. The debtor's argument fails if there is another reason why the derogatory report was made.

The bank showed that there is another reason why the derogatory report was submitted. It was a mistake. The bank had a system in place that was suppose to have stopped such derogatory reports. The system required that a flag be manually set, but it was not. No other efforts were taken to collect the debt. The bank did not refuse to correct the error and did not make correction difficult. There is no evidence that the error was repeatedly made in other bankruptcy cases. There is no evidence of a practice or pattern of conduct that violates the discharge injunction.

Additionally, the debtor proved no damages. Damages must flow from the violation of the injunction. The debtor testified that she paid higher interest rates and was turned down for loans. But, neither was proven to be related to the derogatory credit statement. To have shown that she

paid higher interest rates because of the improper notation on her credit report, she had to show that without the improper notation on her credit report she would have obtained loans with a lower interest rate.  To have shown that she was turned down for loans because of the improper notation, she had to show that without the improper notation on her credit report she would have been offered the loans.

No injunctive relief ordering the bank to correct the erroneous notation is necessary because it has already been corrected.

The complaint will be dismissed.

Alexandria, Virginia
November 21, 2005

/s/Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

copies to:

Robert R. Weed
Dwayne L. Garrett

12551